CHITTENDEN,
*January,*
1843.

Chipman
*v.*
Bates.

---

### WILLIAM P. BRIGGS *v.* TOWN OF GEORGIA.

In an action of assumpsit for service as an attorney, the pocket docket of the plaintiff, on which is entered the name of the case in which he acted as counsel, of itself, furnishes no evidence of his right to charge for his services.

Plaintiff having argued a cause, at the suggestion of the counsel employed in it, his subsequent assent to a proposal of the counsel to make application to his client, to engage plaintiff in the cause, may be given in evidence, for the purpose of showing whether plaintiff rendered the service, expecting to be paid for it.

A want of a freehold qualification in one of the jurors, is a ground for a new trial, if the fact was not known to the party making the motion, at the time of the trial.

THIS was an action of assumpsit for work and labor done by plaintiff as attorney for the defendant.

Plea, general issue ; and trial by jury.

The plaintiff, to maintain the issue on his part, introduced in evidence the docket of the county court, for March term, 1833, by which it appeared that a suit was then pending in said court, in favor of *Ethan Austin* v. *The town of Georgia ;* and also the docket of the said court, for the August and March terms then next following, from which it appeared, that, at the said August term, another suit was entered on said docket, in favor of the same Austin against the said town of Georgia, when both of said cases were continued, and that the names of H. Allen and the plaintiff appeared as attornies for defendant ; and that at the March term, 1834, the two suits were discontinued ; that Mr. Allen was then at Washington, and that no other names were entered on the docket as attornies for Georgia except his and Briggs'.

The plaintiff then introduced evidence tending to prove, that, at the March term, 1833, he, with Mr. Allen, attended the trial, and argued the case to the jury, for the town of Georgia; and that one Mr. Bliss, the agent of the town, sat by, during the whole trial, and aided both the plaintiff and Mr. Allen in asking questions. The plaintiff also read in evidence his own day book, showing charges to have been entered thereon against said town, in the usual course of business, and accompanied it with evidence, tending to prove that he kept a fair and regular book. The plaintiff then offered in evidence his own private pocket dockets of the three county courts aforesaid, to show that the suits of Austin against Georgia were entered thereon—which was objected to and excluded by the court.

The defendant then introduced said Heman Allen, whose testimony tended to prove that he was the attorney of the town of Georgia in the suits aforesaid, and that, at the March term, 1833, after the suit was called, and while they were empanelling the jury, or reading the declaration, the said Briggs came to him and asked him what kind of a suit he had, and he, Allen, told him, and further remarked, it would be a good cause to argue, and said " come, wont you sit down and give me a lift?" (or " help me?") that Briggs replied he would, and did, thereupon, sit down, and attend through the trial, and argue the cause to the jury; and that, immediately after verdict was returned into court against the plaintiff, he, Allen, said to Briggs, I will see the agent, Bliss, (who was then in the court house,) and endeavor to get you engaged; to which Briggs assented;—that Allen went to another part of the house and saw Bliss, and told him, that he, Briggs, had argued the case well, and that perhaps he, Allen, might not be here when the case would be finally tried and thought he had better engage Mr. Briggs. The agent, Bliss, replied, he did not know what the town would do with the suits; they might be settled, and he did not know as he had authority to engage any further counsel, and, at all events, he would not then engage Mr. Briggs; and this reply Mr. Allen immediately repeated to Mr. Briggs. The same evidence tended to prove that at the August term, 1833, both the aforesaid suits were continued by agreement, and that Allen was, at the time, in court, and attended to them.

The defendant also introduced the agent of the town, Bliss, who testified that he had never engaged Mr. Briggs, and when he saw him sitting by and assisting Mr. Allen, he did not know how he came to be there, but supposed it was from some understanding between Allen and Briggs, and did not think of his charging the town ; though he sat by, and might have suggested questions to Allen and Briggs. The testimony of the same witness also tended to prove that between the August term, 1833, and the March term, 1834, both the Austin suits were arbitrated, and an award made, and the suits were agreed to be discontinued.

CHITTENDEN,
*January*,
1843.

Briggs
*v.*
Georgia.

The said Allen's testimony further tended to prove, that he did not employ the said Briggs to attend to said suits or argue the case, in behalf of the town of Georgia, with an expectation that he was to charge the town ; that he was only the attorney, and not the agent, of the town in any other wise ; and that, at the time, he supposed it was understood between him and Mr. Briggs, that his services were gratuitous, and matter of courtesy between them. The plaintiff objected to that portion of the said Allen's testimony which relates to his having conversation, after the trial, with the agent of the town, in regard to his employing the said Briggs in future to attend to the trial ; but the witness testifying that the substance of the conversation was communicated to the plaintiff, the objection was overruled.

The court charged the jury, that, if they found, from the testimony, that the plaintiff, at the time he rendered the services, for which he claims to recover of the defendants, did not intend to charge the town for the same, but, on his part, designed that they should be gratuitous and not made the ground of claim for a pecuniary satisfaction, he could not recover in this action.

The jury were also told, that, in ordinary cases, it was necessary, before a party could recover of another for services rendered, that the jury should be satisfied that the services were rendered at the request of the other party, either expressed or to be implied from the circumstances of the case ; that, in this case, the conversation between the plaintiff and Mr. Allen, as given in evidence, (it appearing that he was simply the attorney for the town, and had no other agency in the management of the suit, and Bliss, the agent for the

town, being present and taking charge of the same) could have no effect to bind the town further than it was expressly or impliedly assented to on the part of the town, or of Bliss their agent; and that, so far, the town would be bound by the acts of Mr. Allen the attorney; and that the important inquiry for the jury was, whether, from the whole evidence in the case, they could find that the plaintiff had been employed by the town or their agent, to render the services; that it was not necessary that this should be proved by direct evidence, but the jury might imply it from circumstances; and that, if they found the agent of the town sat by at the trial, and aided in communicating with the plaintiff, as well as with Mr. Allen, it was strong evidence of an employment of the plaintiff by the town, but not necessarily conclusive; and that, to determine this point, they must take into consideration the whole evidence in the case; and that, if from this, they found an employment, or could infer one from the circumstances of the case, it would be their duty to render a verdict for the plaintiff.

The jury were further instructed, that if the agent, Bliss, sat by, at the trial, and saw the plaintiff rendering the services, and supposed, or had reason to suppose, that the plaintiff intended to charge the town for the same, supposing on his part, he had a right to do so, and the agent suffered him to perform the services, neglecting, at the time, to correct the mistake, and undeceive the plaintiff in this particular, the plaintiff had a right to recover without further evidence of employment.

The jury returned a verdict for the defendant. After verdict, the plaintiff moved for a new trial, on the ground that Heman Allen, the witness, was interested on behalf of the defendant—a fact not known to the plaintiff at the time of trial. To show this interest, he presented the affidavit of S. M. Parsons, tending to prove that, in August, 1839, Mr. Allen said, in his presence, that the plaintiff had no just claim against the town of Georgia, but that, if he was entitled to any fees, he, Allen, ought to pay him.

The motion for a new trial was, also, placed on the ground that Joseph Smith, Jr., one of the jurors who sat in the trial of the case, was not a freeholder. And it appeared to the satisfaction of the court that the said juror was not a free-

holder, at the time of trial; and it also appeared from the <span style="float:right">CHITTENDEN,<br>January,<br>1843.</span> affidavit of the plaintiff, that he did not know that fact at the trial.

The court overruled the motion, and rendered judgment on the verdict. The plaintiff excepted.

Briggs<br>v.<br>Georgia.

*Wm. P. Briggs & C. D. Kasson* for plaintiff.

1. The private docket was, equally with the day book, *competent* evidence.

The books of a party are admissible, upon the ground that they are supposed to contain a true record of the transactions therein noted, in the ordinary course of business, when accompanied with evidence to show that the party keeps correct accounts. The docket, which is, in reality, the *original entry* of the party, going, as it does, to corroborate the entries in the book, stands upon the same or stronger ground than the book itself. *Burnham* v. *Adams,* 5 Vt. R. 313; *Warren* v. *Grenville,* 2 Stra. 1129; *Prince* v. *Smith,* 4 Mass. 455; *Faxon* v. *Holliss,* 13 Mass. 427; *Coggswell* v. *Dolliver,* 2 Mass. 217.

2. The objection to the conversation of Allen and Bliss *after* the trial, was well taken. What was then said by defendants could not affect plaintiff's right already accrued. The court should have limited its application at least to the subsequent services. See authorities below.

3. The charge of the court should relate to the testimony in the case. There was no testimony to show that plaintiff did *not intend* to charge for his services. Nor was his intention, unless expressed in some way by himself, who alone could discover it, at all material. But, as the case is bare of testimony to show plaintiff's intention, the court should have charged the jury, that there was no evidence in the case to elucidate that intention. Hence that they should lay that out of the case. *Knapp & Worden* v. *Winchester,* 11 Vt. R. 351. *Brackett et ux.* v. *Wait et al.* 6 do. 428–9. *Birney* v. *Martin,* 3 Vt. R. 238. *Mason* v. *Silver,* 1 Aik. R. 369. *Vail* v. *Strong,* 10 Vt. R.

4. The charge next puts the case upon the ground that the jury must find the *assent* of the town or its *agent,* either *express or implied;* and that if they do find such assent, the plaintiff may recover.

But, in order to find this assent, they are directed to look to, and weigh, " the *whole evidence* in the case." And that *whole* evidence is, that the *agent* whose " *assent* " is required, says expressly, *after the services are rendered,* i.e. when on the stand now as a witness, that he had *no idea of assenting*.

How could the jury, when directed to find the assent from the whole evidence, ever find it when the fact was *expressly negated by improper testimony?* They should have been told that their decision was to be based, as to the first service, upon the facts and evidence as they existed at the time of rendering them, and that the subsequent " *suppositions* " and conversations of Bliss and Allen could have no such *ex post facto* operation. *Wetherbee* v. *Foster*, 5 Vt. R. 142. *Gibson et al.* v. *Seymour*, 3 Vt. R. 567–9; and authorities before cited.

5. The charge concludes with resting the plaintiff's right upon this: That if Bliss, at the time of the jury trial, " supposed," " or had reason to suppose," that the plaintiff intended to charge the town for his services, supposing on his part, that he had a right to do so, and suffered him to perform them, neglecting to correct the mistake, in this particular, the plaintiff had a right to recover. To this there are two objections.

1. The subsequent " suppositions" of Bliss are required to be considered by the jury, and Bliss' testimony expressly negatives the fact that he supposed any thing about it.

2. If the jury should find a reason for such a *supposition*, (which they cannot, when compelled to weigh such improper testimony,) how is it material, what he might *suppose* that Briggs was intending? For note, that it is made the express condition, not only that Bliss supposed that Briggs *intended* to charge, but that he also supposed that Briggs *supposed he had a right to charge*.

The great error in the charge consists in this, that the jury were not charged in a manner called for by the testimony; nor to assist them in arriving at a correct conclusion. They should have been told that, in determining the fact of *employment* by Mr. Allen, and assent by Bliss, they should not look to the *whole* evidence; they should lay out of the case both Allen's and Bliss' private suppositions, and look no farther than to such acts and expressions of Allen and Bliss as

were, before, or during, the rendering of the service, carried home to the plaintiff's knowledge ;—that Briggs' rights could not depend on their *secret motives.* They should, also, have been told, that the suppositions of Allen and Bliss could only apply to the subsequent services ; and that, even though they should not find the assent of the defendant to the subsequent services, it would not follow that there was no assent to the first employment, as that portion of the testimony could not operate retrospectively against Briggs, who was no party to the same ; that, in the absence of any declaration of the plaintiff, the conversation and conduct of the parties up to, and during, the first services, were the only proper evidence for them to weigh in determining the rights and liabilities of the parties, as to those services. Where the exceptions detail the evidence, and it appears that the charge of the court either was inapplicable to the evidence or calculated to mislead the jury, it is error. See authorities above cited.

6. There was also error in the court below in refusing a new trial. The constitution guarantees the trial by jury, and a jury of such qualifications as the laws of the land may prescribe, to wit, judicious men and freeholders. Hence, if a party is compelled to go to trial before twelve men, not having these qualifications, it is, to say the least, a mis-trial. Smith, the juror, was legally disqualified, and a legal disqualification to do an act, must, certainly, be as fatal as a mental disqualification. The term judicious men, here used, must mean men of legal discretion. Could a party be bound by the verdict of a *minor* or a *non-compos,* because he did not inquire into the facts relative to the whole panel before presenting his case to them ? The party injured, in either of these cases, is entitled to a new trial, as a matter of right. *Fines* v. *Norton,* Cro. Car. 278 ; *Calthorp* v. *Newton,* Cro. Jac. 647 ; *Lady Herbert* v. *Shaw,* 11 Mod. 118 ; *Parker* v. *Thornton,* 2 Ld. Raym. 1410 ; *Russel* v. *Ball,* Barnes 455 ; *The King* v. *Tremaine,* 16 C. L. 318, (7 Dow. & Ryl. 684) ; *Shane* v. *Clark,* 3 Han. & McHenry, 101 ; *State* v. *Babcock,* 1 Conn. 401 ; *Amherst* v. *Hadley,* 1 Pick. 38 ; 11 C. L. 218 ; 15 C. L. 251 ; 3 Vt. R. 570 ; *Hasset* v. *Paine,* Cro. Eliz. 256.

The case shows the materiality of the witness, Allen, to

CHITTENDEN, the defendants. And, if the testimony of Parsons is to be credited, he is not only interested, but makes himself (as matter of conscience) the real party to the defence; and, as such, he can never be made a competent witness by a discharge. *Skillinger* v. *Bolt*, Conn. R. 147; 2 Stark. Ev. 745 (1.)

January, 1843.

Briggs
v.
Georgia.

*A. G. Whittemore*, for defendant.

I. The first exception taken by the plaintiffs is to the decision of the court excluding his *pocket* docket or private memorandum of what he had to do, or was doing in court, from being read in evidence.

This was clearly correct. His usual day book had been previously admitted and read to the jury. The court might as well have admitted any other private statement of the plaintiff, which he chose to write down and keep in his pocket, as his *pocket docket*.

II. The next objection appears to be, to the admission of Mr. Allen's testimony as to the conversation he had with Bliss, the defendant's agent, immediately after the trial, and with the request or assent of the plaintiff, and at the time, repeated by Mr. Allen to the plaintiff.

This conversation, under the circumstances, was proper and legal evidence, for two purposes—

1. To show what the plaintiff and Bliss, defendant's agent, and Allen, defendant's attorney, understood to be the character of the plaintiff's services, and whether, at the time, either expected he was to have a pecuniary compensation therefor. *Briggs* v. *Georgia*, 10 Vt. 68.

2. The Plaintiff's specification showed a claim of some $10 or $15 for services in the same suit, at subsequent times, without any pretence of any further, or other employment. His testimony was, therefore, clearly pertinent and forcible to prove that the plaintiff was not engaged after that time, and had no reason to suppose he was.

III. The charge was in pursuance of the decisions made by this court in this case at a previous term—see 10 Vt. 68—though clearly bearing in favor of the plaintiff. The exceptions, if any, must be to the finding of the jury, and not to the charge of the court.

IV. There are two causes alleged for a new trial.

The first is frivolous. The object would seem to be to have an opportunity to impeach Mr. Allen; for his declarations out of court could not deprive the defendant of his testimony.

2. The cause assigned, that J. Smith jr., one of the jurors who tried the cause, and who was on the legal panel of jurors through the term, was not a freeholder, is only a ground for a challenge and not for a new trial.

The statute directing the selection of jurors—Rev. L. of 1824, p. 410, sec. 5—is directory merely, and a neglect to conform to its provisions will not,-*per se*, be a sufficient ground for setting aside the verdict, when the court see that the party cannot have been prejudiced by it. *People v. Rawson*, Wend. 422. *Cote v. Perry*, 6 Cow. 584.

Suppose a town clerk puts the name of one of the jurors in the box, without having them chosen by the inhabitants present, would that be a cause for setting aside the verdict? Suppose the sheriff should summon the jury from different towns than those ordered by the court, would that vitiate the verdict? Suppose the town should elect a constable, selectman, fenceviewer, or other town officer, who was not a freeholder, would that render such election illegal? Are all such official acts void, or voidable? Most certainly not. And yet the language of the act is *far more imperative* in regard to such officers being freeholders, than in regard to jurors.

The fact that a juror is not a freeholder, does not destroy his judgment, nor make him a partial juror, nor affect the obligation he is under to find a verdict according to the truth. *Gilbert v. Rider*, Kirby, 184.

The juror not being challenged when he was impannelled, the objection is waived. *Wray v. Thorn & Hancock*, Willes, 488; *Hill v. Yates*, 12 East, 229, and a case there cited by Lord Ellenborough; *The King v. Suttons & others*, 15 C. L. 252, in point; *Orcott v. Carpenter*, 1 Tyler, 250.

The case of *Norman v. Beaumont*, Willes, 484, and *King v. Tremaine*, 16 C. L. 318, do not conflict with this position. 1 C. L. 452.

They were both cases where the person sitting as a juror was not of the panel, but falsely answered to the name of one who was, and took *his place*. As the acting juror took the name of, and falsely personated and acted as the real,

CHITTENDEN,
*January*,
1843.

Briggs
*v.*
Georgia.

Chittenden,
January,
1843.

Briggs
v.
Georgia.

legal juror, though without any qualifications, the court say the party could take no challenge, as he was not of the panel; but expressly admit that if he had an opportunity to challenge, and omitted to take it, no new trial could be granted.

The same rule has been recognized and adopted in Massachusetts. *Jeffries* v. *Randall*, 14 Mass. R.250 ; *Amherst* v. *Hadley*, 1 Pick. 38 ; *Howland* v. *Gifford*. 1 Pick. 43.

The only case we have been able to find where a contrary doctrine has been held, is *State* v. *Babcock*, 1 Conn. 401. That was a capital case, decided without argument or reference to any authority to sustain it ; and it is directly opposed to all previous decisions upon the question in that state. *Gilbert* v. *Kid*, Kirby, 184 ; *Sellick* v. *S. H. Turnpike* Co. 13 Con. 459.

If it be a ground for a new trial at all, it is certainly not a matter of right, but addressed to the sound discretion of the court to *grant* or *refuse*, as the court, trying the case, should consider *justice* required. *Hill* v. *Yates*, 12 East, 229 ; *Amherst* v. *Hadley*, 1 Pick. 42 ; *Jeffries et al.* v. *Randall*, 14 Mass. 205.

It is not pretended, in this case, there was corruption or improper conduct on the part of the juror ; or that the verdict would have been varied, if he had not sat on the trial.

This being a motion for a new trial, made to the county court, and addressed to the sound discretion of that court, their decision is not a matter of error, and cannot be revised in this court.

The opinion of the court was delivered by

HEBARD, J.—The first point made in the case is the decision of the county court, in excluding the pocket docket of the plaintiff from going to the jury as evidence. And, in this decision, we discover no such error as would justify us in sending the case back for a new trial. It cannot reasonably be supposed that the jury would have come to any different result, if this docket had been before them. The question was not whether the plaintiff had rendered the services for which he claimed pay, but whether, at the time he was rendering those services, he expected to be paid for them, and whether the agent of the town had reason to suppose the plaintiff so understood it. It was not proposed

to accompany the docket with any proof that it was the custom and practice of the plaintiff to make charges for his services in such docket, or that any were made; but the offer was, " to show that the suits, *Austin* v. *Georgia*, were entered thereon." That fact could have no legitimate tendency to establish the point in controversy in this part of the case. The plaintiff had the benefit of his day book, in which his charges were, in fact, made.

In the next place, we think there was no error in the instructions which the court gave the jury. The parties were evidently requiring of the court a particular charge, in relation to defendant's liability to pay the plaintiff for his services; and we think the charge correct. The court told the jury that they must find the fact from all the testimony in the case. The plaintiff's objection to this is, that the conversation of the plaintiff and Mr. Allen, and the conversation of Mr. Allen and the agent of the town, were not proper to be considered in reference to the plaintiff's understanding in regard to the services which he had already rendered. But we think it was not improper for that purpose. The conversation was in the nature of an admission of an existing fact. The proposition of Mr. Allen that he would have the agent engage the plaintiff, in that suit, and the answer, or reply of the plaintiff to that proposition, might well be considered by the jury, while determining whether the plaintiff rendered the services, expecting to be paid for them.

The objection to the witness, Mr. Allen, on account of interest, is not well taken. It does not necessarily follow that Mr. Allen, in any event, would be liable to the plaintiff; but, were it so, it would be for his interest to fix the liability upon the town, and therefore he has no interest in the event of this suit, to which the plaintiff can with propriety except.

But the important question in this case, and the only one, in which this court have had any difficulty, is in relation to the want of a freehold qualification in one of the jurors. And upon this, the authorities are not entirely harmonious. The only disagreement is in relation to the time, and manner, of taking advantage of this want of qualification. In other words, must it be taken advantage of upon the chal-

CHITTENDEN, January, 1843.

Briggs v. Georgia.

lenge of the juror, at the time of empannelling the jury? or may it be insisted on as a cause of setting aside the verdict? Our statute which was in force at the time of this trial, required jurors to be freeholders. But it has been said in argument, that this is merely directory; and the case of *The People v. Jewett*, 6 Wend. 386, is cited as authority to that point; and also that the only advantage that can be taken of it, is upon a challenge to the juror. I am not very well satisfied with the summary mode of getting rid of a statutory provision, by calling it directory. If one positive requirement and provision of a statute may be avoided in that way, we see no reason why another may not. But the case above cited, is not very direct authority to this point. That case was a demurrer to a plea to an indictment, alleging that one of the grand jurors who found the indictment, was not a freeholder. By a reference to the statute of N. Y. it will be seen that there was no specific requirement that grand jurors should be freeholders. In relation to petit jurors, it is otherwise. Our statute requires both grand and petit jurors to be freeholders. The want of that qualification, is a disqualification, and applies to the juror in one capacity as well as the other. The cause for which a juror is challenged, is supposed to apply to some disqualification of the juror to sit in that particular case, such as prejudice, expressed opinion, interest, or relationship to one of the parties; but these are no general disqualifications, affecting his capacity or legal right to be a juror in other cases. This being a qualification required by law, and the jurors being selected and returned by the officers of the law, without any interference of the suitor, he has a right to presume that none are returned, but such as possess the legal qualifications, and is not therefore bound to rely upon his challenge. All the remarks in the above case from Wendell, that are in point, and applicable to this case, are the mere expressions and opinions of the judge who delivered the opinion of the court, and had little or nothing to do with the question he was deciding. And the authority in the case from Kirby's Reports, 184, is of the same character—the *obiter 'dictum* of the judge.

The case in 1 Conn. 401, is better authority in this case, than the one from Wendell, or the case from Kirby. It

raises and discusses the same question that is involved in this case. In that case the court say, that "although this 'defect does not affect the capacity or moral qualification of 'the juror, and is strictly technical, yet the law is too posi- 'tive to be dispensed with."

In *Fines* v. *Norton*, Cro. Car. 278, one Lambert was sworn upon the jury, but it turned out that his name was not in the *venire facias*, and for this it was held, that error would lie. We think there was much less reason for it than exists in this case. There was no pretence but what Lambert possessed every requisite qualification for a good and lawful juror, only that his name was not in the venire, and that if his name had been in the *venire*, he would have been unexceptionable. But the verdict, for that cause, was set aside. But, in this case, the juror lacked a positive qualification to be a juror in any case. In the case *Rex* v. *Tremaine*, 16 Com. L. R. the court say, " to support a judgment, it must be founded on a verdict delivered by twelve competent jurors." The verdict in this case was not rendered by twelve competent jurors, and the qualification which the juror lacked, was one that the wisdom of all civilized countries has deemed of importance ; and one with which the statute law of this state, up to the time of this trial, had not dispensed; and, we regard the trial by jury, of such paramount importance, that too much care cannot be exercised in preserving all the safeguards which the law has placed around it.

New trial granted.

BENNETT, J. dissenting.

I cannot concur in the opinion of the court just pronounced, granting a new trial. Where the objection to a juror is such that it affects the fairness and impartiality of the trial, it should not be out of season, though advantage of it is not taken until after verdict. But should a verdict be set aside, simply upon the ground that one of the jurors was not a freeholder? The possession of a freehold estate is not such a qualification as goes to the character of the juror. It gives him neither mental capacity, unbiassed feelings, nor a virtuous purpose. The want of it, to a moral certainty, cannot prejudice the fairness of the trial. If a

CHITTENDEN, new trial is to be granted in such a case as this, it should be,
January, I conceive, because "so are the authorities." I think reason,
1843 and the weight of authority are against it. In the case
Briggs of the *State* v. *Babcock*, 1 Conn. R. 401, it is true the
v. court granted a new trial, because one of the jurors was not
Georgia. a freeholder. But this was in a capital case; and though the rule
should probably be the same in civil and criminal trials,
yet this, evidently, had great influence upon the court. Until
this decision, I understand, in Connecticut, the whole
course of decisions had been to regard such objection only
as matter of challenge. The court in *Gilbert* v. *Rider*,
Kirb. R. 184, speaks of its having been, in point of fact, re-
peatedly adjudged, that the want of a freehold estate, though
a ground of challenge, yet was insufficient after verdict.
In *Sellock* v. *Turnpike Company*, 13 Conn. R., the case
of the *State* v. *Babcock*, is evidently disapproved of, and if
the court had found it necessary in the decision of that cause,
it would, I think, judging from what is said, have been over-
ruled. We have, in argument, been referred to a case in the
Maryland Reports, in which the want of a freehold qualifi-
cation in a juror was made the ground of a new trial. The
opinion of the court is indeed laconic, consisting in saying,
"a non juror is as no juror." This is about as satisfactory
as it would be to say, "a juror is a juror." In the case of
the *People* v. *Jewett*, 6 Wend. R. 386, it was held not to
be a good plea to an indictment, that one of the grand ju-
rors, who found the bill, was not a freeholder. In that case
the court seem to think, that the authorities leave it some-
what doubtful whether a freehold qualification was necessary
for a grand juror at common law. By the statute of New
York, passed in 1827, (see 2 Vol. Revised Statutes, p. 720)
it is made the duty of the supervisors, to select and place in
the list for grand jurors, such men *only*, " *as they know, or
have good reason to believe, are possessed of the qualifica-
tions, by law required of persons* to serve as *petit jurors*,
and *are of approved integrity*," &c. The court consider this
statute *merely directory to the supervisors*. The judge who
delivered the opinion of the court, seems to suppose the law
settled in New York, that though the statute requires a
property qualification for a petit juror, yet a verdict will not
be set aside simply for the want of it, though it was not

known to the party at the time of the trial ; and much less, he says, ought it to prevail against an indictment.

In *Jeffries* v. *Randall*, 14 Mass. R. 206, a new trial was refused, where the party neglected to make the necessary inquiry of the juror, by which he might have ascertained the fact which would have disqualified him. This I think should be the rule, in all cases where the disqualification does not affect the fairness of the trial. Though *alienage* is a general disqualification at the common law, Coke Litt. 154–6, and is good matter for a challenge to a juror, yet in *Hollingsworth* v. *Duane*, 4 Dall. 353, and in *King* v. *Sutton*, 15 C. L. R. 252, new trials were refused for such cause. In the latter case, Lord Chief Justice Tenderton says, " he ' is not aware that a new trial has ever been granted on the ' ground that a juror was liable to be challenged, if the ' party had an opportunity of making the challenge." In neither of these cases did the party have notice of the ground of challenge. The disqualification, arising from *alienage*, does not affect the fairness of the trial. In *Gilbert* v. *Rider*, Kirb. R. 184, a new trial was moved for upon the ground that a juror had not taken the oath of *fidelity* to the state. The court held, however, that, if to serve as a juror, was " to execute an office," within the meaning of the statute, which it expressly prohibits any one from doing, until he has taken the oath of *fidelity* to the state, yet, as the juror was not challenged, the exception was waived, and came too late after verdict.

In *Hill* v. *Yates*, 12 East, R. 229, the father had been summoned as a juror, and the son by personating the father, served ; yet, a new trial was refused. It is true, in the case of the *King* v. *Tremaine*, 16 C. L. R. 318, where an infant, under the age of 21 years, and who had not the property qualification, and had not been in fact summoned, personated his father, and joined in a verdict of guilty against a person indicted for perjury, the court held it was a mis-trial, and opened the case after verdict. The juror, in this case, had not attained the age at which the law considers him of sufficient capacity to judge on matters of this kind ; and, consequently, in effect, it was the verdict but of eleven. Besides, the young man was not returned on the panel, nor was he summoned, and must be regarded as no juror at all.

Some of the judges say he could not have been challenged. It was clearly a mis-trial. The case of *Fermor* v. *Dorrington*, Cro. Eliz. 222, and *Hasset* v. *Payne,* Ib. 256, in which it was held to be error, if one man be returned in the *venire facias,* and a different man in the *distringas,* who serves as juror, can have but little analogy to the question before the court. The *venire facias,* is directed to the sheriff, commanding him that he cause at least twelve *free* and *lawful men* to come, &c. Upon this writ it is not the practice for the sheriff to summon the jurors, but he returns the names of those he selects to serve as jurors, in a "*panel*" annexed to the writ, and they of course unavoidably make default in their appearance. Thereupon a compulsive process issues to constrain them to appear, called in the King's bench, a *distringas,* and in the common pleas, a *haebas corpora juratorum.* As the sheriff in England selects the jurors upon the *venire facias,* (a very responsible duty) we at once see the importance, that the process which compels their appearance, should return the same men. *Fines* v. *Norton,* Cro. Car. 278, is a case of the same description, which seems to have been pressed into the argument. If a person, not returned by the sheriff upon the *venire,* is brought in upon the *distringas,* he might have been added upon the suggestion of the plaintiff himself. In such cases I readily grant, there has been a mis-trial ; and the judgments have been reversed upon error. We have no statute in this state, enacting that none but freeholders shall serve as grand or petit jurors, but it it simply directs the authority of the town to agree upon their proportion of *judicious and discreet freeholders* to serve as grand and petit jurors, who are to be nominated by the authority, and chosen by the town. The clerk, is to issue his *venire,* commanding the sheriff to summon such number of petit jurors as the court shall direct, being freeholders. The statute is silent as to what shall be the effect, provided one who serves as a juror is not a freeholder. This must depend upon reason, and the common law authorities. There is a well known distinction between what may be regarded as the essence of a thing required to be done by a statute, and that part of a statute which is *merely directory.* If our statute had expressly provided that a property qualification, should be indispensable for a

juror, it might, I think, with more plausibility be contended that such qualification was in the nature of a condition precedent, and that, without it, a person serving *de facto*, as a juror, should be regarded *de lege*, as *no juror*. In *Orcutt* v. *Carpenter*, 1 Tyler's R. 250, a new trial was moved for upon the ground, that one of the jurors was not a freeholder at the time of the trial, but it was refused. It is true, in that case it appeared the juror was a freeholder when put into the box, though not when summoned, or at the time of the trial.

The fact that he was a freeholder when put into the box could not alter the case. We should look to the qualifications of the juror at the time of trial. If he is then to be regarded as *no juror*, it is a *mis-trial*. All that the case now before the court finds, is, that the juror was not a freeholder at the time of trial. I had supposed this question, had been practically settled. While in the practice of law, I never knew such objection to a juror listened to as a ground of new trial, but uniformly treated as only matter of challenge. The objection does not affect the fairness and impartiality of the trial. It is the interest of the community and of suitors, that there should be an end of litigation ; and to listen to this application is, in my opinion, fraught with evil, and, from inadvertance, and perhaps, in some cases, from design, it may prove a fruitful source of prolonging litigation. The legislature, however, at their last session, by abolishing the freehold qualification for a juror, have provided an antidote for all the evils, which I might fear, would otherwise flow from the decision now made. Admitting then, that the refusing a new trial for this objection, in the court below, did not rest in the discretion of that court, but may be reviewed in this court, upon exceptions, still I think the party can only avail himself of the objection, by way of challenge.