A. C. CROSBY v. SCHOOL DISTRICT No. 9 IN READSBORO, *Appellant.*

*School. School Register. Forfeiture.*

The certificate of qualification, which teachers of common schools are required to obtain from the town superintendent, need not contain any statement in reference to their good moral character.

A teacher of a common school does not forfeit his wages by reason of his neglect to answer the inquiries to teachers contained in the school register, and to certify to the correctness of his record of the daily attendance of the scholars. BARRETT, J., *dissenting.*

But if, in consequence of such neglect, the school district loses a portion of the public money, the teacher must make good such loss to the district.

ASSUMPSIT. Plea the general issue, and trial by the court, at the December Term, 1861, KELLOGG, J., presiding.

On the trial before the county court the parties agreed upon the following facts, viz : The plaintiff's minor daughter, Alletha J. Crosby, taught school in said district from the 3rd day of May, 1859, to the 22nd day of July, 1859, at the price of one dollar and fifty cents per week, under a contract made by the plaintiff with the defendant. At the time she commenced such school she had in her possession a certificate signed by the superintendent of common schools for the town of Readsboro, in the following words:

" This may certify that Miss Alletha J. Crosby has this day been examined in the common English branches of education, and found qualified to teach the same, and is therefore licensed to teach school in the town of Readsboro, for the term of one year. Readsboro, May 2nd, 1859."

The plaintiff's daughter was furnished by the clerk of the district with a school register, as required by the statute, before she commenced the school. She kept in the register a record of the daily attendance of her scholars, but she neglected to enter in the register any answer to but one of the thirty-four statistical interrogatories therein addressed to teachers, or to make any certificate of the correctness of the record of the attendance, tardiness and deportment of the scholars attending her school,

or of the correctness of her answer to any of the statistical interrogatories as required by the register.

In consequence of such neglect the district lost of their public money for that term of school the amount of four dollars and fifty cents.

The plaintiff never received any pay for his daughter's services, as such teacher.

The plaintiff objected to the reception of such agreement, or of any evidence, in respect to the loss of public money by the district through the neglect of the teacher, as irrelevant to the issue, and the court *pro forma* sustained the objection, to which the defendant excepted.

The defendant objected to the certificate of the town superintendent, but the objection was *pro forma* overruled by the court, to which the defendant excepted.

Upon these facts the court rendered judgment *pro forma* for the plaintiff for eighteen dollars, being the amount due to the plaintiff under such contract, and interest thereon since July 22nd, 1859, and costs, to which the defendant excepted.

*W. H. Follett,* for the defendant.

*A. W. Preston* and *A. B. Gardner,* for the plaintiff.

ALDIS, J.   I.   The 8th section of chap. 20, p. 143 Comp. Stat. requires the town superintendent to *obtain full and satisfactory evidence* of the good moral character of school-teachers ; and to ascertain by *personal examination* their qualifications to instruct and govern a school ; and to give them certificates of *their qualifications.* The statute distinguishes between good moral character and qualifications to teach school. The first the superintendent is to ascertain by inquiry, the second by personal examination, and to this he is to certify. The certificate fully complies with the statute.

II.   The Act of 1858, sec. 6, provides that the public money shall be divided among the districts according to the average daily attendance of the scholars, instead of the number of scholars between four and eighteen years of age. Sections 7 and 8

provide for the furnishing of a school register in which the teacher shall " keep a true record of the daily attendance of each scholar, and at the close of his school shall enter in the register correct answers to all inquiries therein addressed to teachers, and *shall return such register to the district clerk previous to the receipt of his wages as teacher."* The district clerk is to file the register with the town clerk with certain returns verified by his oath; and no portion of the public money shall be distributed to a district whose register is not properly filled out.

In this case the teacher kept a record of the daily attendance of her scholars; but she did not answer the interrogatories addressed to teachers, nor certify as to the correctness of her record of attendance as required. It would seem that her record is imperfect or inacurate in some respects. In consequence of her neglect the district lost $4.50 of public money, which they otherwise would have had. The district claims that for such neglect she forfeits all right to wages by virtue of the clause in the 8th section, which enumerates her duties and closes by saying, " and return such register to the district clerk previous to the receipt of his wages as such teacher." The duties, imposed on teachers by that section of the act are, very important. The record of attendance is the basis for the distribution of the public money, and the answers to the statistical inquiries embody facts important for ascertaining the practical working and utility of our school system and for the improvement of our schools.

We think however that it was not the intention of the Legislature to secure the performance of these duties by subjecting the teacher to a forfeiture of wages for non-performance of these duties. The statute is rather directory—pointing out with minuteness the duties to be done and the manner and time of doing them. The thirty-four inquiries require very great minuteness and accuracy in matters of detail connected with the school and the district. If the clause we have above quoted, works a forfeiture of wages, any one omission or neglect in these matters would produce this result. This seems to us a more harsh and severe penalty than the law could have intended to visit upon negligence even in such matters. We think the Legislature

40

intended to rely for the faithful performance of these duties—first, upon clearly specifying to the teacher what was to be done, and secondly, by securing through the presumed fidelity and good intent of the teacher, and through the examinations, visits, vigilance and zeal of the superintendents, prudential committees and visitors, a zealous and diligent attendance to these duties.

It is observed too, that no language is used expressly providing for a *forfeiture* of wages ; and it seems to us that so serious a penalty likely to be visited upon many young persons throughout the state for slight failures and neglects, would not nave been enacted without plain and express words declaring a forfeiture.

It seems just and reasonable, however, and one of the instruments for securing the faithful working of the system, that the teacher should be liable to make good to the district the amount of the public money which the neglect of the teacher causes the town to lose.

As the county court allowed the teacher the whole amount of her wages without deducting for the $4,50, we reverse the judgment and render judgment for the plaintiff for the eighteen dollars deducting therefrom the $4,50 and interest on it to the December term, 1861, and allowing interest on the balance to this date.

BARRETT J., *dissenting.* As I regard the decision to be in direct contravention of a plain statute, rendering nugatory an important provision, and also of well established principles of the common law, and calculated to result in consequences seriously detrimental to the educational system of public schools in the state, as it is constituted by legislative enactment, I deem it my duty to make public the grounds of my dissent, to the end that the decision shall have no further sanction than it derives from the concurrence of the Judges who really made it.

In 1856 the Board of Education was constituted, and its purposes and duties defined. As an important branch of that board, a *Secretary* was also provided, whose duty, among other things, is " to visit schools, &c., and furnish and distribute to them blank forms for collecting statistics of the various schools

in the State. He shall prepare and present to the Board of Education, on the first day of their annual session, a report of his official doings for the preceding year, and a statement of the condition of the common schools of the State," &c.

By section 8, of the act of 1858, relating to common schools, "It is made the duty of every teacher of a common school, before he commences his school, to procure from the clerk of the district, in which he shall teach, a school register, and therein keep a true record of the daily attendance of each scholar who may attend such school, while under his instruction, in accordance with the form prescribed in such register, and, at the close of his school, shall enter into said register correct answers to all statistical inquiries therein addressed to teachers, and return such register to the district clerk, *previous to the receipt of his wages as such teacher,*" &c.

By sec. 6, it is provided, that the public money is to be divided "between the districts in town in proportion to the average daily attendance of the scholars of such districts upon the common schools of such districts during the preceding school year. Such average daily attendance to be ascertained from the record thereof to be kept in the registers of such schools prescribed in this act."

By the last clause of section 8, it is enacted, that " no portion of the public money in any town shall be distributed to any district, whose school register or registers shall not be properly filled out and filed in the town clerk's office, pursuant to the provisions of this act."

Said 8th section requires the performance of the prescribed duty, in respect to the keeping, certifying and return to the clerk of the district, of the register, previous to the receipt of the stipulated wages of such teacher.

The bill of exceptions shows a clear case of neglect of the teacher to perform this duty. It would seem, therefore, on the face of the statute, to be a case in which the teacher was not entitled to receive her wages ; and if she was not entitled to receive them, then the district was under no liability to pay them. This result would not seem capable of being avoided, nor would it

seem capable of being made plainer by discussion. In order to avoid it, it seems necessary to assume that the court may properly disregard and virtually repeal so much of said 8th section as prescribes said duty for teachers, and enacts the consequence to result from their neglect to perform it.

It is of no avail to say that the act does not in terms say that the teacher shall *forfeit* his wages; and therefore invoke the doctrine of a strict construction, as against *forfeiture.* The meaning of the statute is too plain for cavil. Call it by whatsoever name it may please any one to do, the provision is express, that the teacher is to perform the prescribed duty *before receiving his wages.* If by the law he has no right to receive them, it is passing strange that he may, nevertheless, compel the district, by suit, judgment and execution to pay them. But in this the teacher has *forfeited* nothing in the technical sense of a *forfeiture.* She has not entitled herself to receive the stipulated wages. She contracted to keep the school and thereby took upon herself the performance of all the legal duties enjoined and required, and particularly so far as the pecuniary interests and rights of the district depended, under the law upon such duties being performed by her. This she *neglected* to do ; and hence, on very familiar principles, she was not entitled to claim and receive the wages. The contract was entire, and she must perform all she was legally bound to do, before her right to wages accrued ; unless she showed a valid reason by way of excuse for her failure in this respect. This case is destitute of any such reason, and stands upon the naked fact that she *neglected* to perform such prescribed duty.

But if it were to be regarded as a *forfeiture* the case seems equally free from doubt. For the language and meaning of this provision of the statute are plain, and free from ambiguity or doubtfulness. It means just what its terms, in their natural and ordinary sense import, and hence there is no province for *construction* by the court; no ground given for the court to exercise the mystery of judicial construction, to evade or abrogate the obvious effect of the statute.

It seems too plain to be argued, that the purpose of the statute

was to secure the performance of the prescribed duty, and as a most cogent motive, to make the right to wages dependent on such performance.

This view is corroborated by the general scope and obvious purposes of the statutes constituting our present common school system. The results to be attained by the Board of Education and its Secretary require that all the prescribed duties should be performed by the other officers, including teachers, who have to do with the carrying on all our common schools ; and particularly is it necessary that teachers should perform the duties prescribed by the statute for them, in order to furnish important matter for the work to be done by the Secretary of the Board. And beyond this, upon the performance of that duty in respect to the register by teachers, is made to depend the pecuniary interest of the district involved in its right to a share of the public money. Hence the reason for operating, by so stringent a motive, upon the assiduity and faithfulness of teachers in the discharge of that duty.

When the meaning and purpose of the statute is plain, the duty of the court is equally plain, to give the statute effect according to such meaning and purpose, It is not the legitimate province of the court to supervene upon it, and render it nugatory, either in view of the supposed severity of its operation in a particular case, or because the court may think such a provision of the law to be impolitic. Considerations of this kind are proper to be entertained and acted upon by those charged with the duty of making the law, but, by no means, fall within the province of those charged only with the duty of administering it. In this particular case, there is nothing shown, by reason of which, the plaintiff is entitled to claim that there would be any hardship. The duty is plainly prescribed. The register contains explicit directions for the performance of it in detail, with a copy of the law itself prefixed. Any person, qualified to teach a common school, is fully competent to understand, and do the whole duty in detail. This case shows simple *neglect* on the part of the teacher, without cause or excuse ; leaving it to be inferred, that she neglected its performance, as matter of choice. It shows further, the consequence of such neglect on the rights

of the district, in respect to its portion of the public money; and thus illustrates what is above said, as to the essential importance of having the duty performed.

In the opinion delivered, in announcing the decision, it was said that the statute, in respect to the duty of the teacher in this behalf, might be regarded as *directory*. With great deference, I venture to-day, that, amongst all the cases, in which the courts have, with more or less reason, applied this unintelligible doctrine, in disregarding or abrogating explicit provisions of statute law, not one can be found to warrant its application in the present case.

So far as any principle, by which courts have professed to be governed, in holding certain statutes *directory*, in distinction from statutes *peremptory*, is capable of being defined, it is well put by Mr. Sedgwick on *statutory and constitutional law* 3C8, thus: "When statutes direct certain proceedings to be done in a certain way at a certain time, and a strict compliance with these provisions of time and form does not appear essential to the judicial mind, the proceedings are held valid, though the command of the statute is disregarded or disobeyed."

The present case is clearly not of this character. It was not a mere disregard of *form, mode* or *time*, in the doing of the things required; but it was a neglect to do the thing at all, in any form, or mode, or in any time. I think this is the first case, in which a court of last resort has assumed to hold a statute to be merely *directory*, which requires certain things to be done, that are essential to the accomplishment of the leading purposes of the statute; essential, in order that the performance of the duty enjoined on other persons, holding important office under it, may be effective of the ends designed by the creation of such office; essential to the pecuniary rights of the district under the same statute; and which statute makes the performance of such duty, on the part of the claimant, a condition precedent to his right to receive pay of the district, in the capacity in which such duty is required to be performed.

Is this statute any more explicit in any of its provisions, enjoining duties upon other persons, connected with the administration of the common school system, under the laws of the State?

Is it any more explicit in the closing clause of the 8th section ? And in these respects, would it be said that it is merely *directory ?* That is, that the persons charged with those duties, may reject them at pleasure, and no legal consequence will follo w ? or, that the district may have its share of the public money notwithstanding its school register shall not have been filled out and filed in the town clerk's office, pursuant to the provisions of this act ? I think not, and, for the same reason, I think it not warrantable to treat as *directory*—that is, of no importance—the provision as to the duty of the teacher, and his right to receive his wages, when he has neglected to perform that duty, upon which his right to receive such wages is made to depend.

On the subject of holding statutes to be *directory* it is proper to refer to *Holland et al* v. *Osgood*, 8 Vt. 276 ; *Briggs* v. *Georgia*, 15 Vt. 61 ; *Corliss* v. *Corliss*, 8 Vt. 373.

I pass, without discussion, what seems to me to be another unwarrantable feature of the decision, viz : allowing the recovery by the plaintiff with the deduction of what the district lost of public money, in consequence of the neglect of the teacher to keep and return the register, as the statute requires. This is allowing *recoupment* of damages by the defendant ; a practice which has been adopted by the courts of some other states, but which this court expressly declined to adopt in a case in Chittenden county, some two years ago, which I do not find to have been, as yet, reported. If the statute is of any significance, it seems to me entitled to govern the plaintiff's right of recovery, and the measure of such recovery ; and, if entitled to recover at all, I do not discover any measure but the stipulated wages. If the defendant would claim any deduction, it should be asserted by plea in offset, unless the declaration was for *quantum meruit*, which does not appear to have been so in this case.