## JAMES QUINN *v.* JULIUS HALBERT AND JULIUS HALBERT *v.* JAMES QUINN.

*Evidence. Practice. Charge to Jury. Agency coupled with Interest. Conditional Sale. Alienage as Disqualification of Juror. New Trials.*

In replevin against an officer for goods by him attached as the property of D. on writs issued at suit of various persons, plaintiff made claim thereto as a purchaser from D's assignee in bankruptcy, and introduced evidence—the testimony of D., with other evidence—tending to prove that although D. was in possession when the goods were attached he did not own them, but was in possession as plaintiff's agent. Defendant contended that D. purchased and owned the goods, and offered in evidence a copy of the report of the register in bankruptcy and of the judgment thereon, as tending to show that D. had money with which to make the purchase. *Held*, that as plaintiff was not party nor privy to the proceedings in bankruptcy, and was therefore not bound thereby, and as the report did not impeach D., the copies were inadmissible.

Certain of the goods in question were purchased by D. and added to the stock, after the sale by the assignee. Question was whether he purchased them as plaintiff's agent and paid for them with plaintiff's money, or on his own account and with his own money. Defendant offered in evidence an invoice of the goods sold by the assignee, made at the time of the sale, to enable the jury, by using it in connection with the testimony of T., who wrote a small part of it and who examined, appraised, and called off goods while another wrote the rest of it, to separate the subsequently-purchased goods from the others; but it appeared that it did not enable T. to so separate the goods. *Held*, not admissible as a memorandum made by T. and used by him to refresh his memory, and, as it did not enable him to separate the goods, not admissible for the purpose indicated in the offer.

45

The court in charging the jury stated the evidence of one party more fully than that of the other, but withdrew none of the evidence from the consideration of the jury. *Held*, that error was not predicable of such a charge.

Plaintiff conceded that after he purchased the goods he arranged with D. that D. should take possession of and sell them for him and pay him the proceeds thereof till he should receive in the aggregate what he paid for them with interest thereon, when whatever might remain of money or goods should be D's. *Held*, consistent with the idea of an agency coupled with an interest as well as with that of a conditional sale.

The court charged that, to recover, plaintiff would have to prove that he owned the goods. It afterwards charged that if it should appear that any of the goods were so purchased as to be subject to attachment as D's property it would be the duty of the jury to separate them in their verdict. *Held*, no error.

*Held*, that if D. was in possession under an agency coupled with an interest, plaintiff was entitled to recover, but if as conditional purchaser, there being no recorded memorandum, the goods were liable to attachment as D's property, and plaintiff could not recover.

The charge relative to the distinction between such an agency and such a sale was by way of supposed illustrative cases. The legal inferences to be drawn from such illustrations being correct, it was *held* that the case should not be revised for error therein.

But *quære* whether such is a proper way to charge.

An alien is not a legally qualified juror, and if one sit in any cause, the verdict will be set aside on motion, if the disqualification be not known to the moving party until after verdict.

Verdict was for plaintiff. Defendant filed a petition for a new trial, alleging the discovery among the papers of the register of the Court of Bankruptcy of certain receipts from plaintiff to D. tending to show that the goods belonged to D. It appeared that the parties plaintiff in the suits in which defendant made the attachments knew such papers were produced before the register; that before trial they procured such papers filed in the bankruptcy proceedings as were in the district clerk's office, and, not finding the receipts among them, inquired of the register about them; that the register told them he returned all papers to the clerk's office; and that the parties, believing that the receipts had been returned to D., went to trial without further search for them. *Held*, that there was a want of diligence in searching for the receipts, and that a new trial should not be granted.

REPLEVIN for a quantity of clothing. Trial by jury, September Term, 1879, ROYCE, J., presiding. A petition for a new trial was filed by the defendant, and heard with the exceptions.

It appeared that on October 18, 1878, the defendant, as sheriff of Franklin County, attached the clothing in question as the property of William Doran, on writs in suits wherein, on March 31, 1879, judgments were recovered for the aggregate sum of $534.42. The plaintiff claimed to have purchased the clothing— a part of it on March 22, 1878, from Doran's assignee in bankruptcy, and a part of it subsequently through Doran, who, he

claimed, acted therein as his agent. It appeared that on or about January 1, 1878, Doran, who before then had been engaged in St. Albans as a merchant, buying and selling clothing, was adjudged a bankrupt; that Horace H. Farnsworth was appointed his assignee, and took possession of the goods that he then had on hand; and that he remained in possession until March 22, when Doran again took possession and went on with the business. The plaintiff claimed, and introduced evidence tending to show, that he purchased of the assignee the clothing in stock, at the time Doran retook possession, and paid him therefor, $2,125, fifty-five per cent. of the cost price. He introduced, with other evidence tending so to prove, the assignee's receipt of that date for that sum. The defendant contended that the sale was in fact a sale to Doran, and introduced evidence tending so to prove. He offered as evidence tending to prove that Doran had money with which he might have paid for the goods, a copy of a report made by L. L. Lawrence, as register of the Court of Bankruptcy, on a hearing had in June, 1878, and a copy of the judgment of that court on such report. The admission of those copies was objected to, but not on account of any informality, and excluded; to which the defendant excepted.

The plaintiff introduced evidence further tending to show that soon after he purchased the goods he leased the store where they were kept, and made an arrangement with Doran, whereby Doran was to take possession and sell the goods for him, and pay him the money that he might receive therefor until the plaintiff had received what he paid for the goods, with interest at six per cent., when whatever might remain of money or goods should be Doran's; and the plaintiff conceded that the arrangement was substantially such as that evidence tended to prove. He introduced evidence further tending to prove that Doran took possession under that arrangement, and continued to sell goods down to the time of the attachments herein, that during that time he paid the plaintiff as the proceeds of sales the aggregate sum of $1,400, and that he professed to act therein as the plaintiff's agent. The defendant claimed, and introduced evidence which he contended tended to prove, that the arrangement between the plaintiff and Doran was in fact a conditional sale to Doran; and he contended

that inasmuch as there was no memorandum of the contract recorded, the goods were subject to attachment by Doran's creditors. The witnesses whose testimony tended so to show, as the defendant contended, were the assignee, and Hall, his attorney. They testified that they heard the plaintiff tell Doran when they were making the inventory of the goods, as hereinafter stated, that all he wanted was his money back with interest, but that the goods must be his till they were paid for.

It appeared that from time to time, after Doran retook possession and before the attachments herein, goods to the amount, in all, of $517 were purchased and put into the store, and mingled with the goods then in stock; and to those goods the plaintiff claimed title. He introduced evidence tending to prove that soon after Doran began to sell goods he informed the plaintiff that the stock needed replenishing, to be salable; that the plaintiff thereupon gave Doran $300, which Doran used for that purpose; that afterwards when Doran thought the stock needed replenishing, he took, with the plaintiff's consent, money derived from the sales of goods, and purchased more goods; and that all the goods purchased after Doran retook possession were paid for in that way. The defendant contended that the money so given to Doran was borrowed by him, and that the goods so purchased were not purchased with the plaintiff's consent, and were subject to attachment as the property of Doran. There was evidence tending to show that when Doran retook possession he had the word *agent* painted on his sign, and that the bills of some of the goods that were purchased afterwards were made to him as agent.

It appeared that when the attachments were made, the officer who made them made an inventory of the goods, in which he was assisted by P. Twigg and John Branch, Jr. Twigg and one Halbert were introduced as witnesses to testify as to the manner in which the inventory was taken. Their testimony, so far as it is material, and the facts bearing on this question, appear from the opinion of the court. The defendant offered the inventory in evidence in connection with the testimony of Twigg, as evidence to prove what of the goods were purchased after Doran retook possession. The plaintiff objected to its admission, and it was ex-

cluded; to which the defendant excepted. It appeared that Twigg made a schedule of the goods bought after Doran retook possession, which from his examination of the inventory and the bills, he testified he believed to be correct; and the defendant offered that schedule in evidence. Its admission was objected to, and it was excluded; to which the defendant excepted.

Twigg was improved as a witness by the defendant for the purpose of showing what of the goods contained in the inventory were purchased after Doran retook possession, and he was permitted in testifying to use the inventory and said schedule in connection with the bills of goods, to enable him to select and designate the goods. It appeared that the plaintiff was not present when either the inventory or schedule was made.

The defendant offered to prove the value of the goods at the time they were replevied. The evidence was objected to, for that it appeared by the return on the writ that the parties agreed on the value of the goods, and the evidence was excluded; to which the defendant excepted.

After the evidence was all in, but before argument, the defendant moved that the court direct a verdict for him, but the motion was overruled; to which the defendant excepted.

The defendant requested the court to charge that if the goods were sold to Doran, either conditionally or absolutely, the verdict should be for the defendant; that the testimony of Hall and Farnsworth tended to show a conditional sale; that if the jury should so find, the verdict should be for the defendant; and that if Doran borrowed the $300 to buy new goods, and afterwards bought other new goods without plaintiff's authority, the defendant should have a verdict for the new goods. The defendant also requested the court to submit to the jury the question whether the sale was to the plaintiff or to Doran, with instructions as to what would constitute a sale.

The court charged that the plaintiff, to recover, would have to prove that he owned the property in question; and that the assignee's receipt, unexplained, was of itself evidence of title in the plaintiff, but that there was evidence tending to corroborate the receipt—evidence tending to show procurement of money at the

bank and payment thereof to the assignee. The court then stated
some portion of the evidence tending so to show. The court
charged further that if upon all the evidence on that question it
should appear that the plaintiff bought the goods and that they
were paid for with his money, the issue should be found for the
plaintiff, but that if, on the other hand, it should appear that the
plaintiff had not so made out " by a fair balance of proof", the
issue should be found otherwise ; that if it should in like manner
appear that the goods were paid for with Doran's money, then the
purchase would in law be Doran's, although nominally the pur-
chase of the plaintiff. The court then stated some part of the evi-
dence bearing on that question. Upon the question of what would
constitute a conditional sale, the court charged by way of numer-
ous supposed cases illustrative of the difference between such a
sale and an agency coupled with an interest,—characterizing a
transfer of property under an agreement that the property be sold
to the taker at a stated price but that the seller should have a lien
on the property for the price until paid, as a conditional sale, and
a transfer under an agreement that the taker should sell the prop-
erty and have for his trouble all he could get over a minimum
sum, as an agency. The charge called attention to the necessity
for the record of a memorandum of the contract of sale to protect
the property from attachment. In answer to the request to sub-
mit the question whether there was a sale, the court ran over the
evidence, the testimony of the plaintiff, the testimony of Doran,
evidence tending to show that when Doran retook possession he
had his sign changed by adding the word *agent* thereto, and that
the bills for after-purchased goods were made to him as agent,
&c., and told the jury that it was all to be weighed ; and that if
they concluded, after carefully weighing all the evidence, that the
arrangement was as the plaintiff's evidence tended to show—that
Doran was to sell the goods for the plaintiff, pay him his money
back with interest, and keep the rest—the arrangement would not
amount to a conditional sale ; but that if the arrangement was a
sale to Doran with reservation of a lien, that would be a condi-
tional sale. In regard to the goods purchased with the $300, the
court charged that if the money with which the goods were bought

was the plaintiff's, the goods would be his, and not subject to attachment, but that, if the money was loaned to Doran, they would be Doran's, and subject to attachment, if they could be traced ; and that it was for the jury to inquire how that was.   The judge in that connection said he did not remember any evidence tending to show that the $300 was loaned to Doran, except certain admissions of Doran's of which there was evidence.   In regard to the other subsequently-purchased goods, the court charged that if they were purchased with money derived from the sale of goods, as the plaintiff's evidence tended to show, they would be the plaintiff's and not subject to attachment ; that those questions were to be considered on all the evidence ; that if the goods purchased after Doran retook possession were purchased as the plaintiff's evidence tended to show they were, it would not be necessary to inquire whether any of them were subject to attachment, but that if it should appear that any of them were purchased by Doran in such a way as to be subject to attachment, it would be the duty of the jury, on the evidence, to specify and pick out such goods and by their verdict find that they should be returned to the defendant.   To the refusal to charge as requested, and to the charge given, the defendant excepted.

After verdict, which was for the plaintiff, and before judgment, the defendant moved to set aside the verdict, for that Whitman S. Hibbard, one of the jurors, was not a citizen of the State or of the United States, and had not taken an oath or affirmation of allegiance to the State.   The motion was supported by an affidavit to the effect that the juror filed a declaration of his intention to become a citizen of the United States on September 24, 1872, and took the oath of allegiance on September 25, 1879.   There were also affidavits to the effect that those facts were not known to the defendant or his counsel until after the rendition of verdict.   The court overruled the motion, *pro forma ;* to which the defendant excepted.

The petition for a new trial alleged that after the trial one of the defendant's counsel found among the papers of Lawrence two receipts for $350 each, signed by the petitionee, and running to Doran, one of them being expressed to be for " cash loaned to

purchase goods," and the other, " to apply as payment on account of stock of clothing " ; that the receipts were known to have been produced by Doran at a hearing before Lawrence on June 21, 1878, but that " the particular wording " of them was not known to the petitioner or either of his counsel at the time of trial ; that three days before the trial one of the petitioner's counsel, who was also one of the plaintiff's in one of the suits in which the petitioner attached the property in question, went to the office of the district clerk and procured all the papers and exhibits there on file, but did not find said receipts ; that further search was made for them, but that they were not found ; that Lawrence on inquiry assured counsel that all papers and exhibits had been returned to the office of said clerk. The petition was supported by affidavits, two of which were by two of defendant's counsel, and stated that the counsel believed, after not finding the receipts among the papers that were obtained at the clerk's office, that they were among papers returned to Doran by Lawrence, and were in his possession.

*Wilson & Hall, H. R. Start*, and *Farrington & Post*, for the defendant and petitioner.

The copy of Lawrence's report was admissible. *Kimball* v. *Locke*, 31 Vt. 683 ; *Derby* v. *Salem*, 30 Vt. 722 ; *Cavendish* v. *Troy*, 41 Vt. 99 ; *Middlebury* v. *Rutland*, 33 Vt. 414 ; *Hard* v. *Brown*, 18 Vt. 87 ; *Richardson* v. *Hitchcock*, 28 Vt. 757.

The inventory and schedule should have been admitted. They would have aided the jury in determining what goods were new and what old. *Lapham* v. *Kelley*, 35 Vt. 195 ; *Cross* v. *Bartholomew*, 42 Vt. 206 ; 1 Greenl. Ev. 107.

The charge was erroneous in not calling attention to the evidence tending to show that Doran purchased the goods for himself. The effect of not mentioning that, while mentioning the evidence on the other side, was to mislead the jury. It was also erroneous not to charge as requested in regard to the testimony of Hall and Farnsworth. *Bates* v. *Cilley*, 47 Vt. 1. The court should have charged in regard to the effect of that testimony. *Jones* v. *Booth*, 10 Vt. 268 ; *Hazard* v. *Smith*, 21 Vt. 123 ; *An-*

*drews* v. *Moretown*, 45 Vt. 1. The court should have charged as to the principles involved in an agency and in a conditional sale. The illustrations given were calculated to mislead. *Dodge* v. *Stacy*, 39 Vt. 558. It was the duty of the court, after stating the evidence tending to show no sale, to call attention to the facts and circumstances relied on to prove a sale. *Clark* v. *Tabor*, 28 Vt. 222 ; *Sawyer* v. *Phaley*, 33 Vt. 69. The refusal to charge as requested, and the charge given as to the new goods, were erroneous. The court should have charged that it was the plaintiff's duty to designate the new goods.

On the plaintiff's concessions as to the agreement, the defendant should have prevailed on his motion for direction of a verdict. The agreement conceded constituted a conditional sale. Doran could have divested the plaintiff of his title by paying thereunder the fixed price. *Downer* v. *Rowell*, 22 Vt. 347 ; *Smith* v. *Niles*, 20 Vt. 315 ; *Grant* v. *King*, 14 Vt. 367, and cases *passim*.

The juror Hibbard was not qualified. Constitution of Vermont, articles 10, 12 ; Gen. Sts. c. 15, s. 89, c. 37, ss. 4, 5, 10 ; Sts. 1864, No. 12. *Mann* v. *Fairlee*, 44 Vt. 672. The objection was seasonably taken. *Briggs* v. *Georgia*, 15 Vt. 61.

The newly-discovered evidence is material. There was no want of diligence in procuring it. See *Bradish* v. *State*, 35 Vt. 452 ; *Gilman* v. *Nichols*, 42 Vt. 313 ; *Noyes* v. *Spaulding*, 27 Vt. 420.

*Noble & Smith* and *H. S. Royce*, for the plaintiff and petitionee.

The copy of Lawrence's report and of the judgment of the court thereon was properly excluded. The plaintiff was not party nor privy to the proceedings in bankruptcy. Whart. Ev. ss. 823, 839.

The inventory and schedule were properly excluded.

The charge was correct. The arrangement between the plaintiff and Doran created the relation of principal and agent. That question, with all the evidence in the case, was submitted to the jury with appropriate instructions. The question as to after-acquired goods was also duly submitted. True, the judge in charging as to the $300 said he remembered no evidence tending to show that it was not loaned to Doran, except evidence of Doran's

46

admissions, but the jury were instructed to consider all the testimony. There was therefore no error in that. *Dow* v. *School District*, 46 Vt. 108. So long as the court withdraws no evidence from the jury and states no erroneous principle, there is no revisable error. *Sampson* v. *Warner*, 48 Vt. 247, 259. Expression of opinion is no ground for exception. *Durkee* v. *Marshall*, 7 Wend. 313; *Rowell* v. *Jones*, 42 Barb. 24. The rights of the defendant upon matters considered in other parts of the charge were protected by submission of all the evidence to the jury. *Sawyer* v. *Phaley*, 33 Vt. 69. The evidence did not tend to show a conditional sale.

The refusal to direct a verdict was correct.

A new trial will not be granted because one of the jurors was an alien. *Hollingsworth* v. *Duane*, 4 Dallas, 353; s. c., Wal. C. C. 141; *Briggs* v. *Georgia*, 15 Vt. 61, 73. Failure to challenge is a waiver of objection. *Hill* v. *Yates*, 12 East, 229; *Orcutt* v. *Carpenter*, 1 Tyl. 250; 1 Bishop Crim. Proced. 784; 3 Whart. Crim. Law, 3124. There is in this State no positive law disqualifying an alien. Herein this case is distinguishable from *Briggs* v. *Georgia*, Gen. Sts. c. 15, ss. 89, 90, c. 37, ss. 2, 5.

The opinion of the court was delivered by

Ross, J. I. The petition by the defendant for a new trial is dismissed with costs. The attaching creditors, in whose rights the officer, Halbert, defends, knew of the existence of the claimed newly-discovered testimony. They sent to the United States District Court to obtain it, and not finding it there, without having Lawrence, the register in bankruptcy, before whom they knew it had been used, make a thorough examination for it, went to trial without it. They thereby showed a want of diligence in endeavoring to procure it, and knowing of its existence took the chances of the result of the trial without it. They must abide that result. To allow a new trial on the facts shown, would be a plain violation of the rule which requires that the evidence relied upon to change the verdict must have been newly discovered, or, if not, must have been absent from the trial without the fault of the party invoking its aid. He must have used due diligence to obtain it,

and, ordinarily, must have applied for a continuance, making the absence of the testimony and his inability to avail himself of it on the trial, the ground of his application. If, rather than make such application, he prefers to hazard the result of a trial without the testimony, he must abide the consequences of his choice.

II. The exception to the refusal of the court to admit the report of Lawrence, the register in bankruptcy, is not well taken. The plaintiff was neither a party nor privy to the proceedings in bankruptcy, and hence not bound nor estopped by them. The report did not impeach Doran, nor contradict his testimony given on the trial, by showing that he testified differently on the hearing before Lawrence. The report was only the opinion of Mr. Lawrence in regard to the weight of the testimony produced before him, in which he found that the testimony of Doran was overborne by the other testimony.

III. The County Court correctly refused to admit the invoice in evidence. There was no controversy in regard to what goods were attached and replevied. The defendant did not ask to have it admitted for that purpose. The witness Twigg wrote only a part of the invoice. The greater part of it was made by another person while Twigg was engaged in examining, appraising, and calling off the goods. It was not a memorandum made by the witness at the time of the transaction and used by him to refresh his memory when testifying, within the principle announced in *Lapham* v. *Kelly*, 35 Vt. 195, and *Cross* v. *Bartholomew*, 42 Vt. 206. The only use claimed for it was, that, in connection with Twigg's testimony, it would enable the jury better to select from the goods invoiced such as were purchased subsequently to the purchase of the bankrupt stock. But an examination of Twigg's testimony shows that the invoice did not enable him to select therefrom the after-purchased goods. The most he could do was in connection with the bills to select from the goods invoiced such goods as came from the same lots as the after-purchased goods, — the witness at the same time testifying that the goods so selected might have been a part of the bankrupt stock, and not from the after-purchased goods.

IV.  The charge apparently brought the evidence of the plaintiff more prominently to the attention of the jury than that of the defendant.  It doubtless was inadvertently done, and arose perhaps from the fact that the defendant adduced but little direct testimony.  Most of his testimony was circumstantial, and bore indirectly and somewhat remotely upon the main issues involved in the trial.  The court withdrew none of the defendant's testimony from the consideration of the jury, and hence legal error is not predicable of the charge, even if open to the criticism claimed by the defendant.  There was no error in the refusal of the court to order a verdict for the defendant on the concession of the plaintiff. That, with other evidence in the case, was consistent with an agency coupled with an interest, as well as a conditional sale of the goods from the plaintiff to Doran.  Nor do we think there was error in the remark made by the court in reference to the jury's being able to select out the after-acquired goods.  The court in the commencement of the charge had plainly instructed the jury that the burden was on the plaintiff to establish his title to the goods ; and what was said about being able to select the after-acquired goods was not intended by the court to change the burden of proof in this respect, and, we think, would not be so understood by the jury.  The instructions of the court in reference to the distinction between the plaintiff's having placed the goods in the possession of Doran to sell as his agent, giving to Doran an interest therein to the extent of what he could realize for them above what they cost the plaintiff, in payment for Doran's services in making the sale, and a conditional sale of the goods by the plaintiff to Doran, the plaintiff retaining a lien on the goods until paid for, was given pretty much wholly by way of supposed cases, as illustrations.  This method of instructing the jury some members of the court regard erroneous, inasmuch as it casts upon the jury the burden of extracting the law from the illustrations, and then, of applying it to the facts of the case on trial.  They think there is a liability of the jury thereby being misled, in not obtaining definite and precise ideas of the law.  We are unanimous in the opinion that the inferences of law properly drawn from the supposed cases or illustrations, are correct, and

that, if Doran's possession of and relation to the goods was that of an agency coupled with an interest, the plaintiff was entitled to recover, but if it was that of a conditional purchaser, then the goods were attachable and the defendant could lawfully hold them. I am not prepared to hold that legal error is involved in this method of instructing the jury, so long as the principles to be drawn from the illustrations are correct and applicable to the case. Often apt illustrations convey to the common mind most forcibly and clearly the exact legal principles governing the case on trial. It is, however, better that a precise and definite statement of the legal principles governing the case on trial be given to the jury, either before or following the illustrations. The main distinguishing feature in the case at bar between a conditional sale and an agency coupled with an interest, is easy of expression and comprehension. If the former was Doran's relation to the goods, he was bound to pay the agreed price, whether he realized it or not from their sale ; if the latter was his relation, he would not be liable beyond what he should receive from the sale of the goods, made in good faith, in the exercise of ordinary care and prudence ; and, if the amount thus realized was less than the sum fixed by the plaintiff, he would receive nothing for his services in making the sale, but, if more, he would have an interest therein for his services to the extent of the excess. What has been said in regard to the charge of the County Court is not deemed especially important, except so far as it may aid in another trial of the case. On another branch of the case we have found it necessary to reverse the judgment of the County Court.

V. The motion to have the verdict set aside and a new trial granted should have been sustained. Hibbard, one of the jurors, at the time of the trial was an unnaturalized alien, and for that reason not a legal juryman. The statute provides, Gen. Sts. c. 15, s. 89 : "At the annual meeting in each town, such of the board of civil authority as may be present shall agree upon such number of grand and petit jurors as they shall judge will be the proportion of such town to attend the County Court for the year ensuing, which number shall be nominated by said board, and

chosen by the inhabitants present at such meeting." The qualifi-
cations of those who may act in the capacity of jurors is nowhere
prescribed. Formerly they were to be freeholders, but that qual-
ification is not now required. No. 12 of the Acts of 1864 and
No. 50 of the Acts of 1869 require the voters in town meetings to
be citizens, resident in the town, and a citizen is defined to mean
a person born within some one of the United States, or natural-
ized agreeably to the acts of Congress, or who has become a free-
man of this State by virtue of the laws in force before June 26,
1828. Ordinarily, when voters are authorized to elect certain
public officers whose qualifications are not particularly prescribed,
such officers are impliedly to be selected from the voters them-
selves. The statute is silent in regard to the qualifications of
many of town and other elective officers. Yet the universal prac-
tice and understanding has been that such officers must be citizens.
Such has been the practice and understanding in regard to jurors.
The duties of jurors are such as to require that they be taken
from that class who have the right to participate in the manage-
ment and administration of the affairs of the State and govern-
ment. They are jurors for the trial of all kinds of cases both
civil and criminal. It would be anomalous for a person who owes
no allegiance to the State and government to sit a judge of both
the law and fact in the trial of a citizen for treason. By the com-
mon law jurors were to be *liberos et legales homines*. *Liber homo*
was one who had not only freehold land, but freedom of mind,
or not more inclined to one party than the other, and *legalis*
was one not outlawed, and against whom no exception could
be taken in that behalf. These qualifications were always held
to exclude aliens, minors, and villiens. Bac. Ab. Juries. By
28 Edw. III, c. 13, s. 2, in suits between denizens and aliens
the jurors were to be half English and half aliens. This was the
only instance in which an alien was allowed to act as a juror at
common law, and this was by statute. Hence, whether construed
in the light of the common law, or of practice and reason, we
think an alien is excluded from being a legal juryman. The de-
fendant, by the Constitution, had the right to a trial by jury, which
means a legal jury, or a jury of those who could be lawfully

called to act in that capacity. The defendant, not being made aware of the disqualification until after the trial was closed, did not waive it. If knowledge of the juror's disqualification had come to him during the trial, it would have been his duty to have called it to the attention of the court and the other party, and if he had failed to do this, and allowed the trial to proceed, he would have waived the disqualification. *Briggs* v. *Georgia*, 15 Vt. 61; *Mann* v. *Fairlee*, 44 Vt. 672. We are aware there are both English and American authorities which hold that the objection to a juror of alienage must be taken advantage of by challenge, or it is waived. But an examination of the English statutes, *vide* Bac. Ab. Juries, shows that such in effect were the provisions of the statutes. How it may be in the American States holding this doctrine, we have not been able to determine. But in the early case of *Briggs* v. *Georgia*, *supra*, this court held that such objection was not waived by failure to challenge, and we think correctly. The jurors, being elected in the manner already stated, are presumed to be legal jurors, and under our practice it is rarely, if ever, that a juror has been asked whether he was an alien or a citizen. At the present day, when in some portions of the country it is very difficult, under the laws as administered, to obtain well-qualified, intelligent jurors, we think there should be at least no forced construction of the statute that will lower the standard relative to their selection and qualifications. Nor should a party having the right to a trial by jury be compelled to abide the result of a trial by others than legal jurors, unless he has knowingly submitted to such a trial.

*Judgment reversed, motion sustained, verdict set aside, new trial granted, and cause remanded.*