## State of Vermont v. Emmanuel E. Koveos

[732 A.2d 722]

No. 98-248

Present: **Amestoy, C.J., Dooley, Morse, Johnson and Skoglund, JJ.**

Opinion Filed February 5, 1999

*Lauren Bowerman*, Chittenden County State's Attorney, and *Pamela Hall Johnson*, Deputy State's Attorney, Burlington, for Plaintiff-Appellee.

*Karen Shingler*, Burlington, and *Nathan Z. Dershowitz* and *Victoria B. Eiger* of *Dershowitz & Eiger, P.C.*, New York, New York, for Defendant-Appellant.

**Dooley, J.** Defendant appeals from a judgment entered in the Chittenden District Court on a jury verdict finding him guilty of lewd or lascivious conduct with a child in violation of 13 V.S.A. § 2602. He

seeks a new trial because: (1) one of the jurors who heard the case was not qualified for service; (2) the court admitted videotaped testimony of a particular witness; (3) the court warned defendant that presentation of certain testimony would open the door to character evidence under V.R.E. 404(b); and (4) the trial judge had contact with jurors during their deliberations without defendant or his counsel being present. We conclude that all of these asserted errors were either affirmatively waived or insufficiently preserved to require us to disturb the verdict. Accordingly, we affirm.

Defendant does not challenge the sufficiency of the evidence admitted at trial in support of the verdict of guilty. This evidence concerned an incident that took place on January 22, 1997 at the Greek Orthodox church in Burlington, where defendant was serving as a priest. Consistent with the verdict, the evidence permitted the jury to find that defendant touched a 12-year-old girl in a lewd and lascivious manner while giving her a Greek lesson at the church. Two other children, sisters ages nine and eight, were also participating in the lesson. Defendant testified at trial and stated, inter alia, that he regarded the victim as his "grandchild" and never touched her with the purpose of gratifying himself sexually.

The jury was drawn on February 2, 1998, and the trial commenced that day. The jury returned its verdict four days later. The trial court subsequently denied two defense motions for a new trial and sentenced defendant on May 21, 1998 to incarceration of six months to five years, with all but six months suspended in favor of probation. Defendant filed a timely notice of appeal. The trial court denied defendant's motion for a stay of execution, a determination subsequently affirmed by this Court.

Defendant's first contention is that he is entitled to a new trial because the foreperson of the jury was not a resident of Chittenden County as required by 12 V.S.A. § 64. This statute provides that a person is disqualified from serving on a jury if the person is not "a resident of the county." Defendant first brought this issue to the attention of the trial court in his second motion for new trial filed on April 6, 1998, two months after the jury returned its verdict. The court thereafter conducted an evidentiary hearing and determined that (1) the juror in question had been a resident of Chittenden County when the jury pool was assembled in July 1997, (2) she moved to neighboring Franklin County the following month, and (3) a jury questionnaire she filled out, received by the court on the Thursday before the Monday on which she was chosen for the jury in this case, disclosed her change of residence.

For purposes of our analysis, we will assume that the juror in question would have been disqualified from service had defendant raised the issue during jury selection.[1] We hold that defendant has waived this issue by not raising it prior to the impanelment of the jury.

Defendant rests his argument on two nineteenth century cases in which this Court held that the qualification of individual jurors to serve could be challenged even post-trial if defendant did not know of the disqualifying circumstances earlier. See *Briggs v. Town of Georgia*, 15 Vt. 61 (1843) (juror disqualified because he did not meet then-applicable requirement that he be a freeholder); *Quinn v. Halbert*, 52 Vt. 353 (1880) (juror disqualified because he was not a citizen). The rationale is explained in *Quinn*:

> The defendant, by the Constitution, had the right to a trial by jury, which means a legal jury, or a jury of those who could be lawfully called to act in that capacity. The defendant, not being made aware of the disqualification until after the trial was closed, did not waive it. . . . [I]n the early case of *Briggs v. Georgia, supra*, this court held that such objection was not waived by failure to challenge, and we think correctly. The jurors, being elected in the manner already stated [i.e. by election at town meeting upon nomination of board of civil authority], are presumed to be legal jurors, and under our practice it is rarely, if ever, that a juror has been asked whether he was an alien or a citizen. At the present day, when in some portions of the country it is very difficult, under the laws as administered, to obtain well-qualified, intelligent jurors, we think there should be at least no forced construction of the statute that will lower the standard relative to their selection and qualifications. Nor should a party having the right to a trial by jury be compelled to abide the result of a trial by others than legal jurors, unless he has knowingly submitted to such a trial.

---

[1] Specifically, we do not resolve whether the provision of § 64 is superseded by 4 V.S.A. § 962(a)(2). That section provides that a person is qualified to serve if he or she "resides within the geographical jurisdiction of the court in which called to serve." Unlike the superior court which is normally held in each county of this state, see *id.* §§ 111(a), 111a, the district court is organized into circuits and territorial units that may or may not follow county lines. See *id.* § 436. Court sessions may be held "in any town designated by the supreme court where adequate facilities exist for disposing of court business." *Id.* Cases may be moved to other courts within the unit. See *State v. Murphy*, 134 Vt. 106, 107-09, 353 A.2d 346, 348-49 (1976).

*Id.* at 366-67. As defendant emphasizes, we have never overruled *Quinn* by decision.

■ The information available to challenge juror qualifications and the law on preservation of challenges have, however, developed substantially since *Quinn*. With the adoption of the Vermont Rules of Criminal Procedure, we have specifically required that any challenges to prospective jurors "for cause" be made before the jury is impaneled. See V.R.Cr.P. 24(b). There is no exception from this requirement for statutory qualifications. Criminal Rule 24 also authorizes parties and their attorneys to examine prospective jurors prior to their selection. See *id.* 24(a). Moreover, we have adopted jury selection rules that require prospective jurors to complete a questionnaire on their qualifications for jury service. See Rules on Qualification, List, Selection and Summoning of All Jurors Rule 4(b) (1993). Our general policy is now that "[t]he right to challenge a juror is waived by a failure to object before the jury is impaneled if the basis for the objection is known or might, with reasonable diligence, have been discovered during voir dire." *In re Nash*, 158 Vt. 458, 467, 614 A.2d 367, 372 (1991). Once the jury is impaneled, the law presumes the jury is beyond challenge. See *Lattrell v. Swain*, 127 Vt. 33, 37, 239 A.2d 195, 198 (1968).

Our recent decisions reflect a strong policy against finding categories of errors as plain per se, such that preservation is not required for appellate intervention. See *State v. Roy*, 151 Vt. 17, 23, 557 A.2d 884, 888 (1989). Consistent with this policy, we have overruled past decisions that have recognized errors without preservation. See *State v. Loveland*, 165 Vt. 418, 422, 684 A.2d 272, 275 (1996).

We see no reason to ignore the general preservation requirement in these circumstances. The rationale of *Quinn* is no longer persuasive. The decision was not reflected in the drafting of Criminal Rule 24(b). Moreover, as the facts of this case demonstrate, defendant had ample opportunity to determine the facts he now believes are important. By the date of the jury draw, the jury questionnaire had reached the court. If it had not been filed, defendant could have insisted on compliance with the questionnaire requirement before going forward with jury selection, or asked the qualification questions during voir dire.

■ Because the challenge to the qualification of the juror was not made prior to the impanelment of the jury, we review it only for plain error. See V.R.Cr.P. 52(b). "Plain error exists only in extraordinary

situations where it is obvious and strikes at the heart of defendant's constitutional rights or results in a miscarriage of justice." See *State v. Forant*, 168 Vt. 217, 220, 719 A.2d 399, 401 (1998) (citation and internal quotation marks omitted). Defendant has demonstrated no prejudice or violation of his constitutional rights. Because cases may be heard outside the circuit where the case is filed, it is common for jurors to be residents of counties other than that in which the offense occurred. In examining a related issue, we have noted that people's attitudes do not "differ along county lines." *Murphy*, 134 Vt. at 109, 353 A.2d at 349. There is no plain error.

Defendant's next claim of error relates to the admission of a videotape deposition of the elder of the two sisters who had been present during the Greek lesson around which this case centers. During discovery, defendant sought to depose the sisters but, acting pursuant to V.R.Cr.P. 15(f)(2) and (3), the trial court restricted the deposition to written questions submitted to the deponents' attorney. In seeking a protective order that would prohibit the depositions, the sisters' father submitted an affidavit that stated that neither sister "has any personal first-hand knowledge material to the proof of or defense to any essential element of any crime in which Mr. Koveos may or may not have been involved."

Following this ruling, the parties agreed that defense counsel could depose the older sister as long as defendant was not present and the videotape could be used at trial in lieu of live testimony. During her deposition, which was taken before a judge, the sister gave testimony that was highly favorable to the State and, notwithstanding her father's affidavit, involved firsthand knowledge of the events in issue. Over the objection of defendant, the State used the video deposition at trial.

Defendant's primary argument is that the trial court committed plain error in admitting the deposition. In defendant's view, he was denied his right to confront the witness because he was prohibited from attending the deposition and because the deposition was used in lieu of the testimony of an available witness. We fail to see how the admission was error at all. Defendant specifically agreed to the procedure that allowed admission of the deposition, without the live testimony of the sister. Our rule authorizes the parties to agree on the "use of a deposition." V.R.Cr.P. 15(l). Although defendant may have been misled to some degree by the father's affidavit, there is no suggestion that the State participated in the misrepresentation of the

sister's knowledge. Defendant took the risk that the testimony would be adverse.

By motion in limine, made before trial, defendant also objected to the admission of parts of the deposition, asserting that the testimony involved was hearsay, conclusory or speculative. Although the trial judge believed that defendant had waived these objections by not raising them to the judge presiding at the deposition, he nevertheless redacted some of the sister's testimony in a ruling he described as preliminary. As redacted, the video deposition was shown to the jury, and defendant made no further objection to its contents. On appeal, defendant argues that the deposition contained answers that "were conclusory, speculative, based upon hearsay, and/or repetitions of hearsay." He also argues that any probative value in the evidence is far outweighed by the danger of unfair prejudice to the defendant.

■ The criminal rules incorporate the provisions of the civil rules on the necessity of objections to the admission of deposition testimony into evidence. See V.R.Cr.P. 15(i). The civil rule requires that certain objections be made at the time of the deposition: objections to the form of questions or answers; and objections to any error "which might be obviated, removed, or cured if properly presented." V.R.C.P. 32(d)(3)(B). Especially as to answers defendant is now claiming are speculative or conclusory, we believe defendant had an obligation to make an objection, or motion to strike, at the time of the deposition to give the witness an opportunity to reframe the answer. See, e.g., *Kirschner v. Broadhead*, 671 F.2d 1034, 1038 (7th Cir. 1982) (objection that answer was unresponsive must be made at the deposition); *Werre v. David*, 913 P.2d 625, 633 (Mont. 1996) (objection that answer was conclusory must be made at time of deposition).

An example of the deposition testimony to which defendant should have objected was the witness's discussion of why she felt defendant's conduct with the victim constituted abuse. According to the trial transcript, the witness agreed that the term "abuse" applied to defendant rubbing the victim's back over a twenty-minute period because it made the victim uncomfortable and upset. Rather than asking that this characterization be stricken, defendant's lawyer used it to follow up to obtain a more precise description of what the sister saw. As a result of the term's repetitive use, it became difficult for the trial court to edit the video. In fact, at least in the edited video, it was defendant's counsel who introduced the word "abuse"; the witness never actually used it herself.

■ Even if defendant had no obligation to object during the deposition, we believe the trial court's action required him to object at trial. A *denial* of a motion in limine seeking to exclude evidence is normally a preliminary ruling that "does not . . . mean that the evidence is admissible." *State v. Dubois*, 150 Vt. 600, 602, 556 A.2d 86, 88 (1988). The trial court reinforced this situation by stating at one point that its ruling on the motion in limine was preliminary. In this case, defendant obtained much of the relief he sought in the redactions ordered by the court. With few exceptions, defense counsel appeared satisfied with the trial court's action, even expressing agreement with partial relief.[2] Even if the partial denial of the motion could be said to be a ruling admitting evidence, a further timely objection was required.[3] See V.R.E. 103(a)(1).

■ Because defendant failed to preserve the issue, we can review the disputed evidentiary rulings only for plain error. Even if we agreed with the objections to the sister's testimony, we cannot find plain error. Although the sister's evidence helped the State, generally corroborating the victim's story, it was far from determinative. She saw defendant rub the victim's back and called this "abuse" because of the victim's reaction to it. She did not observe defendant grab the victim's leg or touch her thigh or vagina, the conduct that was the essence of the State's charge. She repeated the reactions of the victim's mother to the victim's disclosure of defendant's actions, but the weight of this testimony rested on the credibility of the victim. The asserted errors are not obvious and did not result in a miscarriage of justice.

---

[2] Reinforcing our concern about preservation is the state of the record we are asked to review. Appellant has not filed the video deposition as originally recorded. We have the stenographic transcript of the testimony as presented to the jury, defendant's motion in limine, and the transcript of the motion hearing. We find it very difficult to follow the motion hearing transcript without the video deposition because all testimonial references are to counter numbers on the videotape. We cannot say with certainty why the trial court made the redactions it did and whether it believed it was responding fully to the motion.

[3] By deciding this issue on lack of preservation, we are not suggesting that we agree with defendant's claim that the evidence was inadmissible and sufficiently prejudicial to require reversal of the conviction. Defendant's argument is perfunctory, claiming generally that some answers on the tape were speculative, conclusory or based on hearsay. The argument cites V.R.E. 401 and 403, two rules that have nothing to do with the stated grounds for the objection. Although we do not believe these broad objections warrant further analysis, we have reviewed the testimony of the sister and see no reason to overturn the court's evidentiary rulings.

Defendant next contends that his conviction should be vacated because the court made an evidentiary ruling that improperly prevented him from presenting a full defense. This issue has its genesis in defendant's motion in limine to exclude the testimony of a woman concerning a 1988 incident in which defendant allegedly forced her to watch a pornographic film and sexually assaulted her while she was seeking pastoral counseling from defendant. The motion invoked V.R.E. 404(b), which renders character evidence inadmissible for the purpose of showing that its subject "acted in conformity therewith," but expressly allows introduction of such evidence for other purposes, including proof of intent.

The motions judge granted the motion, relying on the fact that the defense's case centered on the contention that the allegations of the victim were untrue, as opposed to an assertion that any unlawful touching was unintentional. The judge stated that, "should the issue of Defendant's intent be raised during trial, the court will reconsider its ruling."

The issue did arise at trial, at which a different judge presided. Immediately after the State completed the presentation of its case, defense counsel asked if she could call a witness to the stand, an adult who would testify that defendant had rubbed his knee. Although the transcript is not completely clear on this point, it appears that the court regarded the purpose of this testimony as suggesting that defendant is a "hugger and a squeezer" and a "Greek guy" and, thus, that any propensity he demonstrated for touching is "a cultural thing." The trial judge ruled that such testimony was precisely the kind of evidence that would require the court to revisit its ruling in limine. Defense counsel then assured the court that the purpose of calling the witness was not to elicit testimony on whether defendant was "a touchy-feely guy." Rather, she indicated that she simply intended to ask him whether defendant had ever touched him. The court ruled that such questions would amount to "the same thing" and advised defense counsel "to stay away from it." The court also made a similar ruling as to defendant's own testimony. The judge then flatly warned defense counsel that if she elicited any testimony concerning defendant's lack of intent, the evidence of defendant's prior bad act would be admitted. Defendant's position on appeal is that the Rule 404(b) testimony provisionally excluded by the motion judge's ruling would not have been admissible regardless of the evidence adduced by the defense and that, by ruling to the contrary, the trial court

"deprived the defendant of the chance to explain what had occurred."

We have carefully reviewed the transcript of the discussion that included the "ruling" defendant asserts was error. It began with a request by defense counsel for an "advisory ruling" on "scopes," that is, on the extent to which the trial judge would allow cross-examination that exceeded the scope of direct examination. From there, the discussion went into various "what if?" questions raised by defense counsel. This type of discussion may be helpful for counsel to formulate trial strategy, exactly the purpose defense counsel first asserted, but we do not find it sufficiently concrete for appellate review. Essentially defendant is asking to be able to administer a test of hypothetical questions to the trial judge, with the consequence of any erroneous answer being that his conviction is reversed because defendant *might* have offered the evidence described in the hypothetical.

■ Based on the "advisory ruling," defendant never offered evidence on defendant's intent. Thus, we have no offer of proof and no ruling on specific evidence. Defendant is asking us to relieve him of the results of his tactical decision to avoid the Rule 404(b) issue altogether by not introducing the evidence concerning intent. Defendant's choice of a strategic path amounts to a waiver of objections based on what might have occurred had he chosen the alternative. See 21 C. Wright & K. Graham, Federal Practice and Procedure § 5039, at 200 (1977) ("true reason" appeal futile in these circumstances is that "there is no ruling of the trial judge to be reviewed"); see also State v. Zaccaro, 154 Vt. 83, 95, 574 A.2d 1256, 1263 (1990) (rejecting argument that trial court improperly "chilled" defendant's right to confront witnesses in face of "strategic choice" not to introduce testimony that would have opened door to suppressed evidence). In the absence of an "adverse ruling . . . there is no error for review." State v. Goodnow, 162 Vt. 527, 532, 649 A.2d 752, 755 (1994).

Defendant's final contention is that certain contact between the jury and the trial judge during the jury's deliberations requires us to vacate the conviction and order a new trial. Following the submission of the case to the jury, jurors asked that approximately six hours of the testimony, recorded on videotape, be played back for them. The trial judge consulted with counsel and decided to supervise the playback in the courtroom. The prosecutor and defense counsel

agreed that they would not be present for the playback.[4] Defense counsel consulted with defendant, and, thereafter, the court contacted defendant by telephone, with the lawyers present. Defendant was told that he had a right to be present and that, if he did not exercise this right, neither lawyer would be present with the judge and jury. Defendant affirmatively waived his right to be present.

The judge and lawyers then went into the courtroom, where the judge explained the procedure on the record. Thereafter, the jury was brought in, and in the presence of counsel the judge explained the procedure to them. He explained that the courtroom was to be considered the deliberation room during the playback. He indicated that he would leave the courtroom if at any point one or more jurors wanted to discuss the evidence.

The judge asked the lawyers to be available for questions, but, apparently, none arose. At no point did defendant or his attorney make any objection to the videotape playback procedure being used although, once the court explained the procedure, counsel were not present during any of the court's subsequent playing back of video-taped testimony. Defendant did not include his objection to the playback procedure used when he moved for a new trial pursuant to V.R.Cr.P. 33. The claim of error was first brought to the trial court's attention in a written memorandum submitted after sentencing in connection with defendant's motion for a stay of execution pending appeal. At that time, defendant indicated he was raising the issue "based on facts that were not known until after the verdict was returned," asking that the motion for stay on this ground be treated as a motion for new trial.[5]

▮ Defendant, and his counsel, have the right to be present at every stage of the trial. See V.R.Cr.P. 43(a); *State v. Bradley*, 164 Vt. 346, 348, 670 A.2d 811, 813 (1995); *In re Cardinal*, 162 Vt. 418, 419-20,

---

[4] The State moves to supplement the record on appeal with an affidavit from the prosecutor who appeared at trial, setting forth his account of a nonrecorded discussion about the playback issue that apparently took place in chambers between the court and counsel. Because we resolve the issue in the State's favor based on the record already before us, we need not consider the additional materials submitted and we therefore deny the State's motion as moot.

[5] On appeal, defendant elaborates on this assertion by noting in his brief that he learned only after the jury returned its verdict about a colloquy that took place on the record between the court and the foreperson of the jury. According to defendant, he discovered the existence of this colloquy only "when the transcript of the day's proceedings became available" and thus could not raise issues related to it prior to his request for a stay of execution.

649 A.2d 227, 229 (1994). This right can be waived. See V.R.Cr.P. 43(b); *Bradley*, 164 Vt. at 348-49, 670 A.2d at 813. Although we have never had occasion to decide whether a criminal defendant can waive the right to be present, personally or through counsel, when a trial judge interacts with deliberating jurors, we see no reason not to apply the general waiver rule. See, e.g., *United States v. Smith*, 31 F.3d 469, 471-73 (7th Cir. 1994) (defendant has right to be present at private meeting between judge and jurors but right may be waived); *Douglas v. State*, 951 P.2d 651, 679 (Okla. Crim. App. 1997) (trial courts should obtain waivers in such circumstances to avoid error); *State v. McMahon*, 519 N.W.2d 621, 629 (Wis. Ct. App. 1994) (constitutional violation occurs when trial court makes comments to deliberating jury unless defendant waives right to be present); cf. *People v. Moyler*, 634 N.Y.S.2d 593, 594 (App. Div. 1995) (rule against court's communication with jury through "non-judicial intermediary . . . cannot be waived or consented to by defendant").

Defendant emphasizes that he was asked whether he wanted to waive his presence, not the presence of his counsel. However, when defense counsel agreed not to be present during the playback, the trial court properly assumed without further inquiry that counsel had consulted with defendant on the matter. See *Cardinal*, 162 Vt. at 423, 649 A.2d at 231 ("[u]nless a defendant speaks out, normally he must be bound by the trial decisions, actions and inactions of counsel") (citations omitted), *petition for writ of habeas corpus denied sub nom. Cardinal v. Gorczyk*, 81 F.3d 18 (2d Cir. 1996). If defendant claims he was not properly advised by counsel, or that counsel failed to follow his direction, his remedy, if any, lies in a post-conviction relief proceeding based on ineffective assistance of counsel, and not in a direct review of his conviction. See *State v. Lund*, 168 Vt. 102, 106, 718 A.2d 413, 415 (1998) (issues relating to conduct of counsel consigned to post-conviction proceedings when record of trial proceedings insufficient to assess adequacy of representation).

█ Assuming that plain error review is available despite the explicit waivers present here, we find none. Even if, as defendant strenuously asserts, the procedure was unusual, defendant must show some prejudice. See *Rushen v. Spain*, 464 U.S. 114, 119-20 (1983). Defendant has failed to show that anything improper occurred while the jury and judge were together, arguing that he does not have to show improper effect. We see no plain error.

*Affirmed.*